# Exhibit 1

Assigned for all purposes to: Van Nuys Courthouse East, Judicial Officer: Huey Cotton

Electronically FILED by Superior Court of California, County of Los Angeles on 02/19/2021 01:41 PM Sherri R. Carter, Executive Officer/Clerk of Court, by A. Salcedo,Deputy Clerk

ALYSSA CARIDIS (State Bar No. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA  90017-5855
Telephone:  +1 213 629 2020
Facsimile:  +1 213 612 2499

NATHAN SHAFFER (State Bar No. 282015)
nshaffer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

Attorneys for Plaintiff
NCS PEARSON, INC. d/b/a PEARSON VUE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| NCS PEARSON, INC. d/b/a PEARSON VUE, <br><br>Plaintiff, <br><br>v. <br><br>TRADING DIEM, INC., <br><br>Defendant. | Case No. <br><br>**COMPLAINT** <br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT – DEMAND FOR JURY TRIAL

Exhibit 1
6

Plaintiff NCS Pearson, Inc. d/b/a Pearson VUE ("Pearson VUE") hereby brings this Complaint against Defendant Trading Diem, Inc. ("Trading Diem") for accessing Pearson's proprietary computer systems and servers in breach of Pearson VUE's binding terms of service, and in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq.* (the "DMCA"); the California Comprehensive Computer Data and Data Access and Fraud Act, and California Penal Code § 502.

Pearson VUE seeks injunctive relief, statutory and or/actual damages, exemplary damages, attorneys' fees and costs, an accounting, and any such other relief as the Court may deem proper. In support of its claims, Pearson VUE alleges as follows:

## PARTIES

1. Pearson VUE is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business in Minnesota.

2. Trading Diem is a corporation organized and existing under the laws of the State of California. According to records on file with the California Secretary of State, Trading Diem's principle place of business is at 21319 Dumetz Road, Woodland Hills, California 91364.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action because this is a civil action wherein the matter in controversy, exclusive of interest, exceeds $25,000.00 and because Pearson VUE seeks equitable relief. Further, this Court has jurisdiction pursuant to California Constitution Article VI, section 10, which grants the Superior Court "original jurisdiction in all cases except those given by statute to other trial courts." The statutes under which this action is brought do not specify any other basis of subject matter jurisdiction.

4. This Court has personal jurisdiction over Trading Diem because Trading Diem is a corporation formed under the laws of the State of California and has its principal place of business in Woodland Hills, Los Angeles County, California.

5. Pursuant to California Code of Civil Procedure §§ 393, 395, and 395.5, venue is proper in the Superior Court for the County of Los Angeles, because Trading Diem's principle

place of business is in Los Angeles County where Trading Diem conducted, and continues to conduct, its business.

## FACTUAL ALLEGATIONS

**Background on Pearson VUE and Test Auditing**

6. As corporations, educational institutions, and employers review applicant pools consisting or increasingly large numbers of individuals, the use of standardized tests has proliferated as an industry practice in determining applicant value and granting licensure in various fields. Most modern standardized tests are taken on a computer and, due to significant logistical restraints and cost, many are taken by the applicant remotely. In order to ensure an accurate evaluation and prevent testing fraud, stringent security is necessary to ensure that the test-taker's results accurately reflect their knowledge and abilities. Pearson VUE is at the forefront of providing computerized standardized tests in a controlled and secure environment using advanced proprietary technology, whether the applicant is tested in a test center or remotely using their own computer. Many of the world's largest companies turn to Pearson VUE for computer-based testing solutions in order to access Pearson VUE's expertise and technology.

7. Since its founding in 1994, Pearson VUE has been a leading provider of high-stakes exam administration. Today, the use of online proctoring has also increased, making Pearson VUE's computer-based testing highly useful. Headquartered in Bloomington, Minnesota, Pearson VUE is one of the largest computer-based testing companies in the world, employs over 5,000 employees worldwide, and has over 4,500 testing centers in 180 countries. Pearson VUE has developed a comprehensive portfolio of testing sites, online proctoring, test security, and computer-based testing.

**Pearson VUE's OnVUE Platform**

8. In 2019, Pearson VUE launched its next-generation online proctoring tool OnVUE that allows test takers to sit for a proctored exam from almost anywhere with an internet connection and a webcam without going to a test center.

9. The security and integrity of Pearson VUE's testing platforms are of utmost importance. At the individual level, the security of the platform ensures that the test results of the

registered examinee are accurate and have been obtained without outside assistance of any manner. Additionally, the content of tests administered through OnVUE are highly sensitive and confidential information, that, if it were publicly distributed, would greatly reduce the validity of those tests results because examinees could simply study the test content ahead of time to artificially inflate their scores.

10. In order to maintain the security and integrity of the tests that Pearson VUE delivers, Pearson VUE's OnVUE software implements a variety of contractual and technical protections. In order to access the OnVUE software, test takers must agree to access the software solely for the purpose of taking an authorized test. They further agree not to use improper means to access the software or included tests. The OnVUE software includes technical security measures that ensure the registered examinee is the one actually taking the test, that no improper software is being deployed during testing, and that no outside assistance is being rendered. Pearson VUE does not advertise the technical details of the security measures it deploys or otherwise make them known to the public. The technical security measures are proprietary to Pearson VUE because with knowledge of the measures, hackers and unscrupulous examinees seeking to cheat on OnVUE-administered tests could more easily develop workarounds or methods to defeat OnVUE's security measures. Further, Pearson VUE's competitors would find value in knowing Pearson VUE's technical security measures because they could implement them without making the necessary investment in researching and developing their own security measures.

11. Each of OnVUE's security measures effectively control access to the OnVUE system and tests contained therein, and if any of the security measures is activated or triggered, access to the software and tests is disabled automatically.

**Trading Diem's Unlawful Conduct**

12. Trading Diem is a California corporation operated by Sergio Schalcher. One of the services Trading Diem provides is test auditing. In order to test the integrity of exam administration, some testing companies enlist individuals (sometimes known as "secret shoppers"), either directly or through a firm, to sign up for an exam with the goal of cheating on

- 3 -
COMPLAINT – DEMAND FOR JURY TRIAL

Exhibit 1
9

the exam by defeating the exam's applicable security measures. In the context of an in-person test center, a secret shopper might ask for help on the test and offer the test proctors a bribe. In the context of an online or remote test, the secret shopper may try to cheat by defeating applicable security measures. These secret shoppers then report back to the testing company the results of their attempt, and the testing company uses the information to better design and secure their testing service.

13. Trading Diem provides secret shopper services for one of Pearson VUE's direct competitors, PSI Inc. ("PSI"). PSI is a test-administration company affiliated with test centers across the globe.

14. Ana De La Torre ("De La Torre") is an employee or agent of Trading Diem. In early September 2020, De La Torre instructed or directed another Trading Diem contractor or employee, Swati Satyen ("Satyen"), to engage third-parties to take a Pearson VUE exam through the OnVUE software with the purpose of defeating its technical security measures, and reporting on the findings to Trading Diem and ultimately PSI.

15. More specifically, in mid-September 2020, Satyen attempted to take a test administered on behalf of Amazon Web Services, Inc. ("AWS"), which is a client of both PSI and Pearson VUE, at a PSI in-person test center in India. Satyen failed the test, and, acting at De La Torre's direction, solicited help from the test center proctors to cheat on the test. The proctor, Gaurav Rakha ("Rakha"), agreed to assist her in exchange for a cash payment. Satyen and Rakha worked together to set up another test, but did not use PSI's test centers or software, instead arranging for Satyen to take the test through Pearson VUE's version of the AWS test via the OnVUE software. Satyen consulted De La Torre about using OnVUE (as opposed to PSI), and De La Torre directed Satyen to proceed with Rakha's assistance. De La Torre monitored Satyen and Rakha's progress over a period of weeks, and supported their efforts, including by obtaining and providing login credentials for Satyen and Rakha to use in order to access the OnVUE software. Satyen and Rakha, assisted by an unknown third party, made at least one unsuccessful attempt to access the OnVUE software but the attempt was defeated by OnVUE's security measures.

16. On October 11, 2020, Satyen and Rakha, working together with an unknown third party, used software and other tools in violation of OnVUE's terms of service to circumvent access controls and security measures in order to access the OnVUE software and AWS test and obtain a passing score on the test. In the course of doing so, they learned information about OnVUE's security measures that is proprietary to Pearson VUE. Satyen passed this information on to De La Torre and the information was shared within Trading Diem and ultimately disclosed to AWS.

17. De La Torre is based in the United States, and directed the conduct alleged above from the United States. The information obtained through the conduct alleged above was provided to De La Torre in the United States.

18. On information and belief, Trading Diem's management, including its principal Sergio Schalcher, were at all times aware of De La Torre and Satyen's activities regarding the OnVUE software.

## FIRST CLAIM FOR RELIEF

**Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*.**

19. Plaintiff Pearson VUE realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

20. Pearson VUE's computers are involved in interstate and foreign commerce and communication and, to the extent located outside of the United States, affect the interstate and foreign commerce of the United States because they report test taking results to Pearson VUE in the United States, and are thus protected computers pursuant to 18 U.S.C. § 1030(e)(2).

21. Trading Diem knowingly and intentionally accessed Pearson VUE's computers, computer systems, or computer network without authorization and in violation of Pearson VUE's terms of use. Pearson VUE never authorized Trading Diem or any of its agents or employees to access the OnVUE software, or to access the software using technical measures to evade the OnVUE software's security.

22. After gaining unauthorized access and exceeding authorized access, Trading Diem obtained access to valuable information from Pearson VUE's protected computers, including

- 5 -

information about Pearson VUE's technical protection measures and the content of the AWS test, in violation of 18 U.S.C. § 1030(a)(2)(C). This software was otherwise protected by Pearson VUE's technical measures, which Trading Diem circumvented in order to gain access to Pearson VUE's protected computers.

23. Pearson VUE has been damaged by Trading Diem's actions, including being forced to expend resources to investigate the unauthorized access and abuse of its computer network and access to proprietary information, in excess of $5,000 over a one-year period.

24. Pearson VUE seeks compensatory and other equitable relief under 18 U.S.C. §1030(g) in an amount to be proven at trial.

25. Pearson VUE has suffered irreparable and incalculable harm and injuries resulting from Trading Diem's conduct, which harm will continue unless Trading Diem is enjoined from further unauthorized use of Pearson VUE's protected computers. Pearson VUE has no adequate remedy at law. Accordingly, Pearson VUE is entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF

**California Comprehensive Computer Data and Data Access and Fraud Act, California Penal Code § 502**

26. Plaintiff Pearson VUE realleges and incorporates by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

27. Trading Diem knowingly accessed and without permission took, copied, and/or used data from Pearson VUE's computers, computer systems and/or computer network in violation of California Penal Code § 502(c)(2).

28. Trading Diem knowingly and without permission used or caused to be used Pearson VUE's computer services in violation of California Penal Code § 502(c)(3).

29. Trading Diem knowingly accessed and without permission added data to Pearson VUE's computers, computer systems and/or computer network in violation of California Penal Code § 502(c)(4).

30. Trading Diem knowingly and without permission accessed or caused to be accessed Pearson VUE's computers, computer systems, and/or computer network in violation of

California Penal Code § 502(c)(7).

31. Trading Diem knowingly and without permission provided or assisted in providing a means of accessing a Pearson VUE computer, computer system, or computer network in violation California Penal Code §§ 502(c)(2), (3), (4), and (7), which in turn violates California Penal Code § 502(c)(6).

32. Pearson VUE suffered and continues to suffer damage as a result of Trading Diem's violations of the California Penal Code § 502 identified above.

33. Trading Diem willfully violated California Penal Code § 502 in disregard and derogation of Pearson VUE's rights and the rights of legitimate Pearson VUE users, and Trading Diem's actions as alleged above were carried out with oppression, fraud, and/or malice.

34. Trading Diem's conduct also caused irreparable and incalculable harm and injuries to Pearson VUE, and, unless enjoined, will cause further irreparable and incalculable injury, for which Pearson VUE has no adequate remedy at law.

35. Pursuant to California Penal Code § 502(e), Pearson VUE is entitled to injunctive relief, compensatory damages, punitive or exemplary damages, attorneys' fees, costs and other equitable relief.

### THIRD CLAIM FOR RELIEF

**Violation of The Digital Millennium Copyright Act ("DMCA") 17 U.S.C. § 1201(a)(1)**

36. Plaintiff Pearson VUE realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

37. 17 U.S.C. § 1201(a)(1) provides, in pertinent part, that no person shall circumvent a technological measure that effectively controls access to a work protected under Title 17 of the U.S. Code.

38. Pearson VUE's test-taking software, including OnVUE, and Pearson VUE's tests are subject to protection under the copyright laws of the United States, codified in Title 17 of the U.S. Code.

39. Plaintiff Pearson VUE employs numerous technological measures to effectively control access to its OnVUE software and tests.

40. Trading Diem circumvented technological measures that effectively control access to Pearson VUE's OnVUE software and tests.

41. Pearson VUE has been and will continue to be damaged in an amount not presently known with certainty, but which will be proven at trial.

42. The conduct described above has caused harm to Pearson VUE in an amount to be computed at trial.

43. The conduct described above was willful and with knowledge of wrongdoing; an award of statutory damages is necessary to dissuade Trading Diem and others from repeating their actions.

44. Trading Diem's conduct also has caused irreparable and incalculable harm and injuries to Pearson VUE, and, unless enjoined, will cause further irreparable and incalculable injury, for which Pearson VUE has no adequate remedy at law.

45. Accordingly, Pearson VUE is entitled to and demands the range of relief provided by 17 U.S.C. §§ 1201–1203, including, but not limited to, damages in the maximum amount of $2,500 for each of the violations of the statute, injunctive relief, compensatory damages or statutory damages, punitive damages.

46. Pearson VUE is further entitled to an award of attorneys' fees and costs as provided under 17 U.S.C. § 1203.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract

47. Plaintiff Pearson VUE realleges and incorporates by reference, as is fully set forth herein, the allegations in all the preceding paragraphs.

48. Use of the Pearson VUE website and Pearson VUE's OnVUE platform is governed by and subject to the Terms of Service (the "Terms"), which users must explicitly agree to in order to access the OnVUE platform.

49. Trading Diem accessed Pearson VUE's OnVUE platform and agreed to the Terms. The Terms are binding on Trading Diem.

50. The Terms limit use of Pearson VUE's website and software to lawful purposes,

and explicitly prohibit any action that might compromise the security of the site and software.

51. After being bound by the Terms, Trading Diem and/or Trading accessed and used Pearson VUE's software in ways that violate the Terms, including by circumventing technical security measures, compromising security, and obtaining access to the OnVUE software unlawfully.

52. Trading Diem willfully and repeatedly breached the Terms.

53. Pearson VUE has performed all conditions, covenants, and promises required of it in accordance with the Terms.

54. Trading Diem's conduct has damaged Pearson VUE and caused and continues to cause irreparable harm and injury to Pearson VUE.

55. Any future use of Pearson VUE's website or software by Trading Diem and/or Trading Diem's agents acting under the direction of Trading Diem is subject to the Terms.

56. Pearson VUE is entitled to injunctive relief, declaratory relief, compensatory damages, and/or other equitable relief.

**PRAYER FOR RELIEF**

WHEREFORE, Pearson VUE prays that judgment be entered in its favor and against Trading Diem, as follows:

1. A permanent injunction enjoining and restraining Trading Diem, its employees, representatives, agents, and all persons or entities acting in concert with it prior to, during, and after the pendency of this action perpetually from accessing or using Pearson VUE's website, servers, systems, and any data displayed or stored therein, for any commercial purpose whatsoever;

2. A declaration stating (a) that Trading Diem may not access Pearson VUE's website, service, or data in the future; and (b) that any future taking and use of Pearson VUE's data would be without permission and would violate California Penal Code § 502;

3. An order requiring Trading Diem to destroy all documents, data, and other items, electronic or otherwise, in its possession, custody, or control, that were wrongfully accessed from its use of Pearson VUE's services, along with any data that Trading Diem has inferred as a result

of its use of Pearson VUE's products or servers;

    4.    An award to Pearson VUE of damages, including, but not limited to, compensatory damages, statutory damages, profits of Trading Diem, exemplary damages, and/or punitive damages, as permitted by law, in an amount to be proved at trial;

    5.    An award to Pearson VUE of its costs of suit, including, but not limited to, reasonable attorney's fees, as permitted by law; and

    6.    Such other relief as the Court deems just and proper.

Pearson VUE demands a trial by jury on all issues so triable.

Dated: February 19, 2021

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
ALYSSA CARIDIS
NATHAN SHAFFER
Attorneys for Plaintiff
NCS PEARSON, INC.
d/b/a PEARSON VUE